UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

LINDA M. SMITH,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:07-cv-75
(Spiegel, J.; Hogan, M.J.)

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 7), and the Commissioner's response in opposition. (Doc. 8).

## PROCEDURAL BACKGROUND

Plaintiff was born in 1950, and was 55 years old at the time of the ALJ's decision. Plaintiff has an eighth grade education and past work experience as an office manager and night auditor. Plaintiff filed an application for SSI in May 2003, alleging an onset of disability of February 1, 2002, due to degenerative disc disease, chronic obstructive pulmonary disease, gastroesophageal reflux disease, hypertension, and obesity. (Tr. 67-69). Plaintiff's application was denied initially and upon reconsideration. Plaintiff then requested and was granted a de

novo hearing before an administrative law judge (ALJ). Plaintiff, who was represented by counsel, appeared at two hearings before ALJ Sarah Miller. At the second hearing, a Vocational Expert (VE) and medical expert (ME), appeared and testified.

On May 11, 2006, the ALJ issued a decision denying plaintiff's SSI application. The ALJ determined that plaintiff suffers from severe impairments of degenerative disc disease, status post cervical fusion, chronic obstructive pulmonary disease, gastroesophageal reflux disease, hypertension, and obesity. (Tr. 22). The ALJ found such impairments, alone or in combination, do not meet or equal the Listing of Impairments. (Tr. 22). According to the ALJ, plaintiff retains the following residual functional capacity (RFC): she can sit for seven to eight hours in an eight-hour workday, for one hour at a time; she can stand for two to three hours in an eight-hour workday, for 30 minutes at a time; and she cannot crawl or climb, but can occasionally perform all other postural activities. (Tr. 22-23). The ALJ determined that plaintiff's allegations regarding her limitations are not totally credible. (Tr. 22). The ALJ determined that plaintiff is unable to perform her past relevant work. Based on the vocational expert's testimony, the ALJ determined that plaintiff could perform a significant range of sedentary jobs that exist in significant numbers in the national economy. (Tr. 23). Consequently, the ALJ concluded that plaintiff is not disabled under the Act, and therefore not entitled to disability benefits. The Appeals Council denied plaintiff's request for review, making the decision of the ALJ the final administrative decision of the Commissioner.

## APPLICABLE LAW

The following principles of law control resolution of the issues raised in this case.

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

To qualify for SSI benefits, plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. Eligibility is dependent upon disability, income, and other financial resources. 20 C.F.R. § 416.202. To establish disability, plaintiff must demonstrate a medically determinable physical or mental impairment that can be expected to last for a continuous period of not less than twelve months. Plaintiff must also show that the impairment precludes performance of the work previously done, or any other kind of substantial gainful employment that exists in the national economy. 20 C.F.R. § 416.905.

Regulations promulgated by the Commissioner establish a sequential evaluation process for disability determinations. 20 C.F.R. § 404.1520. First, the Commissioner determines whether the individual is currently engaging in substantial gainful activity; if so, a finding of nondisability is made and the inquiry ends. Second, if the individual is not currently engaged in substantial gainful activity, the Commissioner must determine whether the individual has a severe impairment or combination of impairments; if not, then a finding of nondisability is made and the

3

inquiry ends. Third, if the individual has a severe impairment, the Commissioner must compare it to those in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1. If the impairment meets or equals any within the Listing, disability is presumed and benefits are awarded. 20 C.F.R. § 404.1520(d). Fourth, if the individual's impairments do not meet or equal those in the Listing, the Commissioner must determine whether the impairments prevent the performance of the individual's regular previous employment. If the individual is unable to perform the relevant past work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show that there is work in the national economy which the individual can perform. *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048 (6th Cir. 1983); *Kirk v. Secretary of H.H.S.*, 667 F.2d 524 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).

Plaintiff has the burden of establishing disability by a preponderance of the evidence. *Born v. Secretary of Health and Human Servs.*, 923 F.2d 1168, 1173 (6th Cir. 1990); *Bloch v. Richardson*, 438 F.2d 1181 (6th Cir. 1971). Once plaintiff establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that plaintiff can perform other substantial gainful employment and that such employment exists in the national economy. *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999); *Born*, 923 F.2d at 1173; *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980). To rebut a prima facie case, the Commissioner must come forward with particularized proof of plaintiff's individual capacity to perform alternate work considering plaintiff's age, education, and background, as well as the job requirements. *O'Banner v. Secretary of H.E.W.*, 587 F.2d 321, 323 (6th Cir. 1978). *See also Richardson v. Secretary of Health & Human Services*, 735 F.2d

4

962, 964 (6th Cir. 1984)(per curiam). Alternatively, in certain instances the Commissioner is entitled to rely on the medical-vocational guidelines (the "grid") to rebut plaintiff's prima facie case of disability. 20 C.F.R. Subpart P, Appendix 2; *O'Banner*, 587 F.2d at 323. *See also Cole v. Secretary of Health and Human Services*, 820 F.2d 768, 771 (6th Cir. 1987).

It is well established that the findings and opinions of treating physicians are entitled to substantial weight. "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997). *See also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference."); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same). Likewise, a treating physician's opinion is entitled to weight substantially greater than that of a non-examining medical advisor. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985); *Lashley v. Secretary of H.H.S.*, 708 F.2d 1048, 1054 (6th Cir. 1983). If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight. 20 C.F.R. § 1527(d)(2); *see also Wilson v. Commissioner*, 378 F.3d 541, 544 (6th Cir. 2004); *Walters*, 127 F.3d at 530. "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical

5

records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994).

The Social Security regulations likewise recognize the importance of longevity of treatment, providing that treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. § 404.1527(d)(2). In weighing the various opinions and medical evidence, the ALJ must consider other pertinent factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544. In terms of a physician's area of specialization, the ALJ must generally give "more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist." 20 C.F.R. § 404.1527(d)(5).

## MEDICAL EVIDENCE

On February 20, 1997, plaintiff underwent a cervical diskectomy and interbody fusion of C5-6 with carbon implants. (Tr. 187). A November 1998 MRI of the cervical area showed a displaced fusion plug at the C5-6 area. (Tr. 192A). Plaintiff was only able to squat 20% of normal due to pain. (Tr. 192A).

On February 18, 2002, plaintiff was seen at Bethesda Hospital following a car accident in which she sustained chest and facial trauma. X-rays of the lumbar spine showed mild joint space

compromise at the L4-5 level. (Tr. 199). The emergency room report showed moderately severe ligamentous strain of the cervical spine secondary to hyperextension and thoracolumbar paraspinous muscle strain. (Tr. 202). An MRI on that date showed mild reverse lordosis of the lower cervical spine, possibly related to position or a spasm, and post surgical change in C5-6 fusion. (Tr. 189).

A physical exam completed by Dan Buchanan, D.C. on February 11, 2003 showed a reduced range of motion in cervical flexion and extension, reduced strength in cervical extension and left wrist extension graded at +4/5, and reduced reflexes and sensation corresponding to the C5 and C6 disc levels. (Tr. 190).

Plaintiff was seen in the emergency room at Bethesda Hospital on May 1, 2003, for bilateral pneumonia and respiratory distress. In addition, it was thought that plaintiff may have an underlying component of COPD. (Tr. 206). Her saturation level was 88% on room air. (Tr. 227). A CAT scan of May 4, 2003 showed emphysema, bilateral patchy infiltrate with a ground glass appearance suggesting acute alveolitis, small bilateral pleural fluid collections layering along the posterior chest bilaterally, and small axillary and middle mediastinal lymph nodes. (Tr. 213).

Plaintiff was again admitted to Bethesda Hospital on May 15, 2003 for shortness of breath and was diagnosed with acute respiratory distress and leukocytosis. (Tr. 226). A bronchoscopy performed on May 25, 2003 showed mildly friable mucosal tissue, probably responsible for hemoptysis, recent clinical diagnosis of pneumonia, and mild changes on the posterior larynx. (Tr. 257). Plaintiff was seen for follow-up care at Bethesda Family Practice on June 3, 2003 at which time she was given a diagnosis of hypertension, COPD with emphysema,

7

and resolving pneumonia. (Tr. 266).

In May 2003, Dr. Bishop, who had examined plaintiff in the hospital, reported plaintiff had no limitations on standing, walking, or sitting. (Tr. 219). Dr. Bishop stated plaintiff could lift/carry six to ten pounds frequently and 11 to 20 pounds occasionally. *Id.* Pushing, pulling, and bending were not significantly limited. *Id.*

In October 2003, Dr. Fritzhand examined plaintiff for the Bureau of Disability Determination due to her complaints of problems with her low back, neck and breathing. (Tr. 273-277). Plaintiff reported that her dyspnea (difficulty breathing) had increased in severity over the preceding seven to eight months. (Tr. 276). Dr. Fritzhand's examination "certainly suggest[ed] a considerable supratentorial component [psychologically-based] to her musculoskeletal complaints." (Tr. 276). During his examination, plaintiff's cooperation and effort were only fair and her initiation of effort was inconsistent. (Tr. 275-276). He was unable to obtain satisfactory lung testing, and the existing results showed only a "minimal pulmonary impairment." (Tr. 276).

In November 2003, Dr. Kelley, a state agency reviewing physician, evaluated the severity of plaintiff's impairments and concluded that she had no documented severe impairment with the available evidence. (Tr. 288). Dr. Kelley noted that plaintiff's claimed limitations of standing, sitting, walking and breathing were not supported by the evidence. (Tr. 288).

In March 2004, Bruce Siegel, D.O., completed a residual functional capacity assessment. (Tr. 311-314). Dr. Siegel noted that due to plaintiff's lumbar sprain, cervical sprain, and degenerative disc disease in her back she was limited to carrying and lifting five pounds occasionally, with no frequent carrying or lifting of any weight. (Tr. 311). He also opined that

8

plaintiff could stand and walk for one hour in an eight-hour workday, in five minute increments, and sit for two hours in an eight-hour workday, in fifteen-minute increments. (Tr. 312). Dr. Siegel opined that plaintiff could never climb, balance, stoop, crouch, kneel or crawl, and that reaching and pushing were affected by her impairments. (Tr. 312, 313). Plaintiff was further restricted from heights, moving machinery, temperature extremes, humidity and vibration. (Tr. 313). Dr. Siegel also opined that plaintiff needed to use her right arm to assist her back in rising from a chair, and that she required frequent position changes. (Tr. 314).

In August 2004, Dr. Taylor provided a consultative report to plaintiff's primary care practitioner, Dr. Sultan. (Tr. 322). Dr. Taylor reported that lumbar spine x-rays showed lumbar spine arthrosis. (Tr. 322). He noted that a July 2004 MRI of the hip showed a small degenerative cyst of the left acetabulum (Tr. 321, 322) and recommended a bone scan. He also believed that plaintiff had degenerative disc disease with sciatica, and recommended an MRI. (Tr. 322). Two weeks later, Dr. Taylor reported that plaintiff was completely neurologically intact. The MRI showed no significant spinal canal or neuroforaminal stenosis and the bone scan showed no evidence of uptake in the hip and no evidence of metastatic disease or any other problem. (Tr. 330). Plaintiff had positive straight leg raising tests on both visits with Dr. Taylor who opined that plaintiff had mechanical low back pain. (Tr. 330).

In May 2005, an MRI of plaintiff's lumbar spine was normal. (Tr. 384). A lumbar x-ray in July 2005 showed mild to moderate facet arthrophy in the lower lumbar spine with decreased bone density, and no other significant abnormality. (Tr. 385).

In December 2005, at the second administrative hearing, Richard Watson, M.D., a specialist in physical medicine and rehabilitation, testified as a medical expert. (Tr. 521-528).

Dr. Watson disagreed with the residual functional capacity of Dr. Siegel, and testified that plaintiff would be able to lift twenty pounds occasionally, ten pounds frequently, and occasionally perform postural activities. (Tr. 19, 521-523). Although he observed plaintiff get out of her seat at least twice during a thirty-minute period, Dr. Watson found that she could sit for an hour at a time based on her MRIs and the results of her physical examinations. (Tr. 524). The medical expert testified that plaintiff's neck fusion presented limitations of motion. (Tr. 524-526). Dr. Watson stated that pain would be associated with plaintiff's medical conditions, but he was not sure about whether such pain would be significant enough to interfere with her concentration. (Tr. 528).

In February 2006, two months after the second administrative hearing, Dr. Mehta completed a residual functional capacity assessment. Dr. Mehta diagnosed plaintiff with chronic lumbar pain with sciatica, arthritis in the low back, and cervical pain with narrowing. (Tr. 399). She described plaintiff's prognosis as fair. (Tr. 399). Dr. Mehta noted plaintiff's symptoms included severe lumbar, neck and hip pain and tingling and numbness. (Tr. 399). Dr. Mehta opined that plaintiff's pain was severe enough to constantly interfere with her attention and concentration, and that she was incapable of even low stress jobs. (Tr. 400). Dr. Mehta believed that plaintiff could sit or stand for ten minutes at a time, for a total of two hours each during a workday. (Tr. 401). She felt that plaintiff needed a job where she could shift positions at will, and that every fifteen minutes, she should walk for five minutes. (Tr. 401). Dr. Mehta estimated that plaintiff would need to take unscheduled breaks during the workday, every fifteen minutes, that would permit plaintiff to rest for twenty minutes. (Tr. 401). Dr. Mehta also believed that plaintiff's legs should be elevated two to three feet for four hours per eight-hour workday. (Tr.

10

402).  Plaintiff could never carry any weight, look down, or climb ladders, or rarely look up or turn her head right or left. (Tr. 402).  Plaintiff could occasionally hold her head in a static position. (Tr. 402). Dr. Mehta stated that plaintiff could rarely twist, stoop (bend), crouch/squat or climb stairs and would have significant limitations with reaching, handling or fingering. (Tr. 402, 403).  Dr. Mehta opined that plaintiff would miss more than four days per month as a result of her impairments. (Tr. 403).  Due to arthritis, plaintiff would not be able to work in cold, damp weather.  Finally, Dr. Mehta wrote that due to severe pain plaintiff was unable to perform gainful employment. (Tr. 403).

## PLAINTIFF'S TESTIMONY

Plaintiff testified at the hearing she can sit about fifteen to twenty minutes and stand about ten minutes.  She further testified she is unable to use a cane due to the pain in her neck. She also testified she has trouble lifting, climbing stairs and has trouble balancing. (Tr. 513-514).

## OPINION

Plaintiff raises four assignments of error.  First, plaintiff alleges the ALJ erred by not accepting the RFC opinions of plaintiff's treating physicians.  Second, plaintiff argues the ALJ improperly discredited plaintiff's complaints of pain.  Third, plaintiff contends the ALJ erred by not giving Dr. Mehta's RFC report to Dr. Watson and having a third hearing to address Dr. Mehta's findings.  Fourth, plaintiff argues the ALJ erred by not finding plaintiff wholly credible. For the reasons that follow, the Court finds the ALJ's decision is supported by substantial evidence and should be affirmed.

Plaintiff contends the ALJ should have accorded controlling weight to the RFC opinions of Drs. Siegel and Mehta who opined that plaintiff could not perform even sedentary work.

11

Plaintiff contends that the ALJ ignored these opinions and failed to follow controlling Sixth Circuit law by not giving controlling weight or complete deference to the treating doctors' opinions.

Contrary to plaintiff's contention, the ALJ did not ignore the opinions of the treating physicians. The ALJ acknowledged that the treating physicians reported an RFC of less than sedentary work (Tr. 19), but specifically rejected their assessments as inconsistent with the objective evidence of record. (Tr. 20). In determining plaintiff's RFC, the ALJ relied on the testimony of Dr. Watson, the medical expert who testified at the second hearing and who disagreed with Dr. Siegel's assessment. (Tr. 19).

The ALJ's decision in this regard is supported by substantial evidence. To be afforded controlling weight, the opinion of a treating physician must be well-supported by medically acceptable clinical and laboratory diagnostic techniques, and must not be inconsistent with other substantial evidence in the record. *See Walters*, 127 F.3d at 530; 20 C.F.R. § 404.1527(d)(2). In weighing the opinions of the treating physicians, the ALJ was required to consider factors such as the length, nature and extent of the treatment relationship, the frequency of examination, the medical specialty of the treating physician, the opinion's supportability by evidence, and its consistency with the record as a whole. 20 C.F.R. § 404.1527(d)(2)-(6); *Wilson*, 378 F.3d at 544.

Plaintiff argues that Dr. Siegel "has seen plaintiff since 1995" and therefore his opinion was entitled to greater weight than that of Dr. Watson, the non-examining medical expert. However, plaintiff has made no attempt to show how Dr. Siegel's opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Walters*, 127 F.3d at 530. Dr. Siegel rendered his RFC opinion in March 2004. The medical records submitted by Dr. Siegel

12

in conjunction with this opinion (*see* Tr. 300) contain no contemporaneous progress notes or clinical examinations of plaintiff, or recent objective findings to support his opinion. Rather, the records include MRI and x-ray findings from 1995, 1996, and 1997, some seven years prior to Dr. Siegel's RFC, and one MRI from February 2002 after plaintiff's auto accident. The 1995 studies include a normal lumbar MRI (Tr. 301) and a cervical MRI showing only moderate herniation. (Tr. 302). The lumbar MRI of 1996 showed mild arthropathy and was otherwise normal. (Tr. 303). The two 1997 cervical spine x-rays showed mild narrowing and a possible spur (Tr. 304) and mild spondylotic changes, but were otherwise normal. (Tr. 305). A post-fusion x-ray of plaintiff's cervical spine from March 1997 revealed "slight increased distance between the spinous processes of C5 and C6" (Tr. 306) and a July 1997 cervical x-ray showed "normal alignment of the cervical vertebral bodies following a bone plug fusion procedure at the C5-6 level" and "no evidence of abnormal motion on flexion or extension following C5-6 bone plug fusion. " (Tr. 307). The July 1997 cervical MRI showing possible bony mass (Tr. 308) and a normal MRI of the lumbar spine. (Tr. 309). Finally, the most recent record attached was a 2002 cervical spine x-ray showing post-fusion surgical changes and only mild reverse lordosis, possibly related to position or spasm. (Tr. 310). Plaintiff testified she saw Dr. Siegel only three times, once a month for three months. She did not state when these visits occurred, nor does the record disclose this information. (Tr. 494, 510).

Here, the record fails to disclose Dr. Siegel's specialty, when Dr. Siegel examined plaintiff, or the treatment he prescribed and response to such treatment. The theory behind the treating physician rule is that a doctor who has treated a patient over a long period of time "will have a deeper insight into the medical condition of the claimant than will a person who has

13

examined a claimant but once, or who has only seen the claimant's medical records." *Barker*, 40 F.3d at 794. Given his limited treatment of plaintiff and the lack of any explanation for his RFC opinion, the ALJ was fully supported in her decision not to give Dr. Siegel's opinion deference over the opinion of the medical expert who had the benefit of a complete record, including the opinions of the other examining and consulting physicians. In the absence of any recent clinical or objective findings to support his opinion, the ALJ was not required to give Dr. Siegel's limited RFC opinion controlling or even great weight.

Likewise, the ALJ's decision to reject Dr. Mehta's extreme limitations is substantially supported. As the ALJ noted, Dr. Mehta's conclusion that plaintiff could perform less than the full range of sedentary work was similar to Dr. Siegel's residual functional capacity opinion, which Dr. Watson rejected at the second hearing in December 2005. Nor has plaintiff demonstrated that Dr. Mehta's report is supported by the objective and clinical evidence of record. Contrary to plaintiff's argument, the ALJ was not obligated to convene a third hearing based on plaintiff's submission of Dr. Mehta's report after the second hearing had concluded. *See Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) ("An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary.").

The ALJ's decision to give Dr. Watson's opinion great weight is substantially supported by the record. Dr. Watson's opinion was consistent with the opinions of the other physicians of record. As the ALJ's decision reflects, neither Dr. Fritzhand, Dr. Kelly, Dr. Bishop, Dr. Sultan, nor Dr. Taylor provided such extreme limitations as Dr. Siegel. (Tr. 18-19). Dr. Fritzhand was unable to assess plaintiff's functional limitations due to a lack of cooperation from plaintiff and because several of the tests results were considered invalid. (Tr. 273-287, 288). Dr. Kelly, based

14

on a review of Dr. Fritzhand's examination and the other evidence of record, opined that the evidence did not support the physical limitations claimed by plaintiff. (Tr. 288). While a chiropractor reported reduced range of motion, reduced strength in cervical extension and left wrist extension graded at +4/5, and reduced reflexes and sensation corresponding to the C5 and C6 disc levels in February 2003 (Tr. 190), one month later Dr. Bishop reported that plaintiff had no limitations on standing, walking, or sitting; that plaintiff could lift and carry six to ten pounds frequently and 11 to 20 pounds occasionally; and that pushing, pulling, and bending were not significantly limited. (Tr. 219). Dr. Sultan, who saw plaintiff twice in 2004, reported no significant limitations. (Tr. 289-299). Dr. Taylor also reported in 2004 that plaintiff was "completely neurologically intact" and, despite positive straight leg raising, the MRI showed no significant spinal canal or neuroforaminal stenosis and a bone scan showed no evidence of uptake in the hip and no evidence of metastatic disease or any other problem. (Tr. 330). In view of the conflicting medical opinions in this case, the ALJ's decision to call a medical advisor to assist in the evaluation of such evidence was reasonable. Dr. Watson was able to review all of the medical evidence in the record over the four year period of plaintiff's claimed disability and to observe plaintiff's testimony at the hearing. Under the circumstances of this case, it was reasonable for the ALJ in assessing plaintiff's RFC to rely on the testimony of the medical expert who opined that plaintiff could sustain a full work week, lift ten pounds frequently and twenty pounds occasionally, and perform work requiring occasional postural activities.

The ALJ is ultimately responsible for assessing a claimant's RFC, taking into consideration the opinions of medical sources and other relevant evidence. *See* 20 C.F.R. §§ 404.1527(e), 404.1545. In this case, the ALJ was faced with inconsistent and contradictory

evidence. On the one hand, Drs. Siegel and Mehta opined that plaintiff was unable to perform even sedentary work. On the other hand, Drs. Watson, Kelly and Bishop opined that plaintiff was not so limited. In determining plaintiff's RFC, the ALJ acknowledged these extremes and reasonably devised an RFC for a limited range of sedentary work. The ALJ took into consideration all of the medical evidence of record and reasonably accommodated plaintiff's impairments by limiting plaintiff to a range of sedentary work. (Tr. 22-23). It is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984), and the record reveals that the ALJ considered all of the medical evidence in assessing plaintiff's residual functional capacity. Therefore, plaintiff's first and third assignments of error are not well-taken and should be overruled.

Plaintiff's second and fourth assignments of error assert that the ALJ erred by discrediting plaintiff's complaints of pain and by not finding her wholly credible. Plaintiff argues she "has been seeing Dr. Siddiqi in the pain management department of Clermont Hospital for injections in her joints for chronic pain" and the "ALJ did not address this issue of chronic pain and how it affects Plaintiff." (Doc. 7 at 7). She also states she has been prescribed pain injections and strong pain medications to treat her pain.

Plaintiff submitted the records from Dr. Siddiqi in connection with her appeal to the Appeals Council. (Tr. 8). Where, as here, a plaintiff presents evidence to the Appeals Council but not to the ALJ, and the Appeals Council considers the additional evidence but declines to review the plaintiff's claim, the District Court may not consider that additional evidence in determining whether the ALJ's decision is supported by substantial evidence. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001); *Cline v. Commissioner of Social Security*, 96 F.3d 146 (6th

16

Cir. 1996); *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993). *See also Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007). The Court may only consider such evidence in connection with a request for a remand under sentence six of 42 U.S.C. § 405(g). *Id.* The Court may remand the case for further proceedings if the plaintiff demonstrates "there is new evidence which is material and there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). *See id.* The burden of demonstrating good cause for remand is on the claimant. *Foster*, 279 F.3d at 357 (citing *Oliver v. Secretary of Health & Human Services*, 804 F.2d 964, 966 (6th Cir. 1986)).

Here, plaintiff does not request a sentence six remand for further consideration of Dr. Siddiqi's records. Rather, she asks this Court to consider this evidence in support of her substantial evidence argument which this Court is prohibited from doing. (Doc. 7 at7). Even if the Court assumes that plaintiff intended to ask for a sentence six remand, plaintiff makes no attempt whatsoever to show how the new evidence is material or that there is good cause for failure to incorporate the evidence into the record before the ALJ. *See Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993). Therefore, plaintiff's contention is without merit.

Plaintiff further contends she suffers side effects of sleepiness and dizziness (presumably from her medications), which were not addressed by the ALJ, citing Tr. 119-183, 219-263. (Doc. 7 at 8). The Court notes that the records cited by plaintiff date back to 1992 (Tr. 119), some ten years prior to her alleged onset date, and during a time when she was employed. (Tr. 92, 121-128, 177-179). Plaintiff's blanket citation to over 100 pages of medical records without specific citations to particular records or any explanation of what is contained within those records and

17

how it is pertinent to her case is wholly unhelpful to the Court. The Court declines to speculate what plaintiff's argument is in this regard.

Finally, plaintiff argues her complaints of chronic pain and her physical limitations are supported by the RFC opinions of Drs. Siegel and Mehta. (Doc. 7 at 8, 9). While this may be true, the ALJ's decision to reject these opinions is supported by substantial evidence as discussed above and, therefore, plaintiff's reliance on such opinions is misplaced. Moreover, the ALJ's determination that plaintiff's subjective allegations regarding her symptoms and limitations are not wholly credible is fully supported by the record evidence.

As the ALJ noted, the objective tests and physical examinations over the relevant time period revealed mild to moderate findings at worst, and that much of plaintiff's problems stemmed from lifestyle issues, including deconditioning and tobacco abuse. (Tr. 20). The ALJ's decision is supported by Dr. Kelly, who noted that plaintiff's physical limitations were not supported by the evidence (Tr. 288), and Dr. Fritzhand, who was unable to assess plaintiff's functionality due to her non-cooperation. (Tr. 20, 276). The ALJ's decision reflects that she properly considered the required factors in determining plaintiff's credibility. *See* 20 C.F.R. § 404.1529(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk*, 667 F.2d at 538. Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

For these reasons, the ALJ's RFC finding is supported by substantial evidence and should be affirmed.

18

## IT IS THEREFORE RECOMMENDED THAT

The decision of the Commissioner be **AFFIRMED** and this case be dismissed from the docket of this Court.

Date: 6/2/08

Timothy S. Hogan
United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

LINDA M. SMITH,
    Plaintiff

vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant

Case No. 1:07-cv-75
(Spiegel, J.; Hogan, M.J.)

NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO THIS R&R

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten (10) days after being served with this Report and Recommendation. Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to thirteen (13) days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail, and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation are based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten (10) days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).